1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD RIOS, | ) | 1:08cv1414 LJO GSA |
| | ) | |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| Plaintiff, | ) | REGARDING PLAINTIFF'S SOCIAL |
| | ) | SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**BACKGROUND**

Plaintiff Richard Rios ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendation to the District Court.

**FACTS AND PRIOR PROCEEDINGS**[1]

On August 26, 2003, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also filed a Title XVI application for supplemental security income on November 3, 2003. AR 40. In both applications, Plaintiff alleged disability beginning October 3, 2002. Both claims were denied initially and upon reconsideration. AR 40. Plaintiff requested a hearing before an administrative law judge ("ALJ"). After a hearing, ALJ Richard D. Wurdeman issued a decision denying benefits on September 28, 2006. AR 45. On November 24, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further consideration of Plaintiff's maximum residual functional capacity ("RFC") on a function by function basis, and to obtain evidence from a vocational expert ("VE") to clarify the effect of the assessed limitations on the Plaintiff's occupational base. AR 47-48. Following another hearing, ALJ Christopher Larsen issued a second decision on May 29, 2008, again finding that Plaintiff was not disabled. AR 19. The Appeals Council denied Plaintiff's request for review on July 25, 2008. AR 6. Plaintiff filed the current action on September 22, 2008.

Hearing Testimony

On May 20, 2008, ALJ Larsen held a hearing in Fresno, California. Plaintiff appeared with her attorney, Geoffrey Hayden. VE Linda M. Ferra also appeared and testified. AR 14, 570-581.

The ALJ presented the following hypothetical to the VE. He asked her to assume a worker of Plaintiff's age, education, and work experience, who could lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk a total of six hours in an eight-hour workday, and sit a total of six hours in an eight-hour workday. In addition, the ALJ told the VE to assume that such a person could never reach overhead with his left arm, could occasionally fully extend his left arm, and could never forcefully push or pull with his left arm. AR 572. The VE concluded that there were jobs in the regional or national economy that the hypothetical person could perform. AR 573.

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1    According to the VE, one such example would be that of a cashier. The VE explained that
2 such work is categorized as light and unskilled, and that there are approximately 113,000 jobs in
3 the state. AR 573. However, the VE opted to reduce that number by thirty percent, estimating
4 that some of those positions might involve reaching overhead, and might even require the use of
5 both hands. AR 573.  Nevertheless, the VE concluded that despite the thirty percent erosion,
6 there would be about 80,000 jobs remaining. AR 573. The ALJ then asked the VE if she could
7 provide a corresponding *Dictionary of Occupational Titles* (DOT) number. In response, the VE
8 provided a representative number for cashier II: 211.462-010. AR 573. The VE then gave another
9 example, that of a parking lot attendant. The DOT number she provided for that occupation was
10 915.473-010. AR 573. The VE categorized the work as light and unskilled, and predicted that
11 there were 8,500 such jobs available statewide, and ten times that number available nationwide.
12 AR 573.

13    The VE was then presented with a second hypothetical. She was asked to assume a
14 person of Plaintiff's age, education and work experience,  who could lift and carry a maximum of
15 ten pounds. AR 574. When asked whether such a person could perform the cashier's job, the VE
16 stated that although there were some jobs within the cashier category that were sedentary, the
17 numbers would be far reduced. AR 574.

18    The VE was then asked to consider, once again, the person in the first hypothetical. In
19 addition, she was asked whether the fact that this person has a problem with his left arm would
20 place him in more of a sedentary category. AR 574. The VE testified that the "light" category
21 oftentimes does not involve lifting or exertion, it can simply involve standing instead of sitting,
22 and therefore the shoulder impairment would not affect the categorization. AR 574. The VE
23 further explained that many jobs can fall into the light category simply by virtue of the standing
24 involved, and may often require minimal lifting. AR 575.

25    The VE was then asked to categorize Plaintiff's past work with regard to exertion. AR
26 575. The VE stated that Plaintiff's past work as a print shop helper fell within the semi-sedentary
27 and medium categories. She opined that if his other jobs were laborer jobs and fell within the
28 medium to heavy category, he would not be able to perform them. AR 575.

3

1   When asked whether the VE believed that Plaintiff could perform any of his past work,
2   the VE replied that he could perform the jobs that fell into the light category. AR 575. The VE
3   was then asked whether Plaintiff could perform his past work as a garment folder, a job that fell
4   within the light category. The VE said yes, conditioning her response on her understanding that
5   the job only required extension of the left arm, rather than reaching overhead with it. AR 577.

6   Plaintiff then testified that he had never really worked as a garment folder, but that
7   garment folding was one of the duties attendant to silk screen printing - one of his past
8   occupations. AR 577. As part of his job, Plaintiff would be required to lift the screen over his
9   head, and then bring it down again. AR 577. The procedure was repetitive, and the final stage of
10  the job required Plaintiff to fold garments. According to Plaintiff, garment folding was a very
11  small part of his printing work. AR 578. Thereafter, in the VE's opinion, Plaintiff could no
12  longer perform his past work as a silk screen printer. AR 578.

13  The VE was then asked to recall the second example she had previously given, that of the
14  parking lot attendant. AR 578. The VE explained that the job of a parking lot attendant fell into
15  the light category. According to the VE, a parking lot attendant would not be expected to drive
16  cars, and would only be required to stand in the toll booth and perform transactions involving
17  cash or credit cards, and therefore, someone with the same age, education, and work experience
18  as Plaintiff could perform a job as a parking lot attendant. AR 579.

19  Finally, the ALJ asked the VE whether her testimony was consistent with the (DOT) and
20  *Selected Characteristics of Occupational Titles* (SC). The VE replied that it was. AR 579.

21  <u>Medical Record</u>

22  Based on his reading of a laboratory/x-ray report dated February 4, 2003, M. Javad
23  Naderi, M.D., noted status post intramedullary rod placement in the left femur. No other
24  abnormality was visible. AR 399. He also reported that bone density was unremarkable and that a
25  single surgical clip was observed in the left pelvis. AR 399.

26  On March 3, 2004, Rajeev Manu, M.D., performed an Esophagogastroduodenoscopy with
27  biopsy for Clo-test. AR 200. He reported the following findings: the distal esophagus in the
28  lower one-third showed severe esophagitis with linear ulcerations and erosions; the fundus of the

stomach was normal; the lower part of the body and the antrum showed erosive gastritis which was moderately severe, and the duodenum showed mild duodenitis which was also severe. AR 200. Dr. Manu diagnosed Plaintiff with "Grade III esophagitis with ulcer, erosive gastritis, moderately severe, and erosive duodenitis, mild." AR 200.

On March 8, 2004, Thomas B. Rios, M.D., conducted a comprehensive internal medicine examination of Plaintiff. AR 138. Dr. Rios reported that there was a grossly perceptible acromioclavicular joint separation at the left shoulder joint along with some tenderness and limited range of motion. His examination of the lower back revealed some tenderness along the lumbar spine and on the sciatic notch on the left. There was no true nerve root impingement observed. AR 140. His examination of the heart revealed no gallop rhythm. There was some murmur, but pulses were strong without any pulse deficit. He also found that motor strength on the left upper extremity was reduced to 4/5, but grip strength bilaterally was strong and adequate. AR 141. Dr. Rios made the following diagnoses: status post AC separation on the left; mechanical back pain with history of left femur fracture; history of mitral valve prolapse; and reflux esophagitis. AR 141.

A physical RFC assessment dated April 5, 2004, showed that Plaintiff could occasionally lift and/or carry a maximum of fifty pounds, and could frequently lift and/or carry a maximum of twenty-five pounds. AR 144. According to the assessment, Plaintiff also retained the ability to stand and/or walk for a total of about six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. AR 144. However, Plaintiff's ability to push and/or pull was limited in the upper extremities. The assessment also showed that Plaintiff could do the following activities frequently: climbing, balancing, stooping, kneeling, crouching and crawling. AR 145. Plaintiff was advised to avoid repetitive reaching overhead with the left arm. AR 146.

On April 16, 2004, Vahdatyar Amirpour, M.D., performed an operation on Plaintiff involving the excision of the lateral end of the left clavicle. AR 191. Dr. Amirpour's postoperative diagnosis was painful grade III dislocation of left acromioclavicular joint. AR 191.

On January 24, 2005, Plaintiff underwent an MRI of the left shoulder without contrast. AR 176. The MRI showed that there was some articular surface fraying or superficial tearing of

the supraspinatus tendon, and that the distal clavicle was attenuated and may have been partially resected. AR 176.

On October 7, 2005, Plaintiff underwent a repeat acromioplasty on the left shoulder. Dr. Amirpour also performed an additional excision of the lateral end of left clavicle. AR 488.

On May 18, 2006, Hazrat Rafah, a certified Physician Assistant, noted status post left shoulder acromioplasty, and excision of the distal clavicle. AR 470. The physical examination of Plaintiff showed no deformity, and no swelling or ecchymosis. However, there was some mild tenderness to palpation in the mid part of the clavicle. Plaintiff's range of motion was reported to have improved with physical therapy. AR 470.

On June 13, 2007, Jerry C. Fox, M.D., conducted an MRI scan of the lumbar spine without intravenous contrast. AR 519. The following were the reported conclusions: mild degenerative changes of the lumbar spine; moderate neural foraminal narrowing bilaterally at the L4-5 level; and mild posterior protrusion of the annulus at the L5-S1 level. AR 519.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 3, 2002, the alleged onset date, and that Plaintiff had the following severe impairments: left shoulder impingement status post left shoulder acromioplasty, status post intramedullary rod placement in the left femur, and degenerative changes of the lumbar spine. AR 16.

Based on a careful consideration of the entire record, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 Code of Federal Regulations sections 404.1567(b) and 416.967(b), except that he could never reach overhead with his left upper extremity, could occasionally fully extend his left upper extremity, and could never forcefully push or pull with his left upper extremity. AR 17.

The ALJ also found that Plaintiff could not perform any past relevant work. He noted however, having taken into consideration Plaintiff's age, education, work experience, and RFC, that Plaintiff could successfully perform other jobs that exist in significant numbers in the national economy. AR 18.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ found that Plaintiff: (1) has not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform any past relevant work, and (5) retained the RFC to perform jobs that exist in significant numbers in the national economy.   AR 16-18.

Here, Plaintiff argues that the ALJ erred in failing to elicit a reasonable explanation for the inconsistency between the VE's testimony and the DOT. He contends that this Court should reverse and order the immediate payment of benefits.

**DISCUSSION**

<u>The ALJ's Reliance on the VE's Testimony</u>

Plaintiff contends that the ALJ erred in finding that Plaintiff could perform work as a cashier or parking lot attendant when such findings conflicted with information in the DOT and SC. More specifically, Plaintiff claims that the ALJ failed to identify and obtain a reasonable explanation for the inconsistency between the VE's testimony and the information contained in the DOT and SC.

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p;  *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008).

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. The adjudicator must explain in the decision how the conflict was resolved, irrespective of how the conflict was identified.

SSR 00-4p.

1    An ALJ may not rely on a VE's testimony without first inquiring whether the testimony
2 conflicts with the DOT. *Massachi*, 486 F.3d at 1151. To deviate from the DOT classification, an
3 ALJ "may rely on expert testimony which contradicts the DOT, but only insofar as the record
4 contains persuasive evidence to support the deviation." *Tommasetti,* 533 F.3d at 1042; *Johnson v.*
5 *Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995); *Light v. Social Security Admin*., 119 F.3d 789, 793
6 (9th Cir. 1997). "Evidence sufficient to permit such a deviation may be either specific findings of
7 fact regarding the claimant's RFC, or inferences drawn from the context of the expert's
8 testimony." *Id*.

9    Here, it is undisputed that ALJ Larsen did ask the VE if the evidence she had provided
10 was consistent with the DOT and its companion publication, the SC. At issue is whether the ALJ
11 failed to elicit a reasonable explanation for deviation from the DOT before relying on the VE's
12 testimony, as is required by Social Security Ruling 00-4p.

13    Here, the ALJ asked the VE to assume a person of Plaintiff's age, education and work
14 experience, who could lift and carry twenty pounds occasionally, ten pounds frequently, stand
15 and walk for a total of six hours in an eight-hour workday, and sit a total of six hours in an eight-
16 hour workday. AR 572. In addition, the VE was asked to assume that such a person could never
17 reach overhead with his left arm, could occasionally fully extend his left arm, and could never
18 forcefully push or pull with his left arm. AR 572-573. In response, the VE suggested that
19 Plaintiff could still perform light and unskilled work, and provided two examples; cashier II
20 (DOT 211.462-010) and parking lot attendant (DOT 915.473-010). AR 573. Having estimated
21 that there were approximately 113,000 cashier jobs available in the state, the VE then
22 spontaneously reduced that figure stating, "I'm going to reduce that by 30 percent because I think
23 some of those might have some reaching overhead, and although it's not likely that it would – the
24 reaching would require two hands, it could, and I feel that that number should be reduced
25 somewhat...." AR 573. According to the VE, that would leave 80,000 jobs available statewide
26 despite the thirty percent erosion in the occupational base. Additionally, there were
27 approximately 8,500 parking lot attendant positions available statewide. The VE did not reduce
28 the latter figure by thirty percent. AR 573.

9

Here, however, the VE's testimony was, in fact, <u>inconsistent</u> with information contained in the DOT. According to the DOT and the SC, both cashier II and parking lot attendant jobs require frequent reaching i.e., "extending hand(s) and arm(s) in any direction. "Frequently" implies that the "activity or condition exists from 1/3 to 2/3 of the time." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, U.S. *Department of Labor* 333, 365 (1993).  In the first hypothetical the ALJ posed to the VE, he specified that the hypothetical person could <u>never</u> reach overhead with his left arm, and could only occasionally fully extend his left arm. AR 572.  Having presumably taken these limitations into consideration, the VE proposed that Plaintiff could still perform the above jobs that existed in significant numbers in the regional or national economy. Therefore, the VE's testimony clearly contradicted information contained in the DOT, and the ALJ could only rely on the testimony insofar as the record contained persuasive evidence to support the deviation.

The VE's purported reasons for eroding the occupational base by thirty percent were based on pure speculation as is evidenced by her statement "I'm going to reduce that by 30 percent because I <u>think</u> some of those might have some reaching overhead." AR 573, *emphasis added*. The VE failed to indicate specifically on what grounds she felt the reduction was justified, whether it was because some jobs required reaching overhead, or because they required reaching with both arms. AR 573. Therefore, it was up to the ALJ to determine whether the VE's explanation for the conflict was reasonable and whether there was a basis for relying on the VE rather than on the DOT. Under the circumstances, the ALJ was not permitted to rely on the VE's contradictory testimony without having elicited a reasonable explanation for the clear departure from information contained in the DOT. The ALJ did not identify with specificity what aspect of the VE's experience warranted deviation from the DOT. Neither did he point to any evidence in the record other than the VE's speculative testimony, in order to justify departure from the DOT. Because neither the ALJ nor the VE explained the reason for departing from the DOT and SC, substantial evidence does not support the ALJ's conclusion that Plaintiff could perform the jobs of cashier II and parking lot attendant.  The VE's explanation for her determination as to the number of jobs available in the regional or national economy was not persuasive enough to

overcome the presumption imposed by the DOT, that the physical requirements of the jobs she suggested exceeded Plaintiff's physical capabilities. Therefore, the ALJ's determination as to the number of jobs available to Plaintiff was error. Consequently, the ALJ failed to discharge the Commissioner's burden at step five of the sequential evaluation, and therefore his decision is neither supported by substantial evidence nor free of legal error.

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id*. (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988) ("Generally, we direct the award of benefits in cases where the record has been thoroughly developed.").

Based on the record before the Court and the procedural history of Plaintiff's action, the Court finds that a useful purpose would be served by remand. Accordingly, the Court recommends that the decision of the Commissioner be REVERSED and the case be REMANDED to the ALJ for further proceedings as outlined: (1) The ALJ should present hypotheticals that accurately exemplify Plaintiff's physical limitations; (2) Before relying on the VE's testimony, the ALJ should attempt to identify and resolve any inconsistencies between the VE's testimony and the information contained in the DOT and SC; (3) In the event any such inconsistency is identified, the ALJ should resolve the conflict by determining if the explanation given by the VE is reasonable and provides a basis for relying on the VE testimony, rather than on the DOT information, and shall expressly and specifically state the basis in his findings.

**RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, this Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be GRANTED, that the Commissioner's decision be REVERSED and the case be REMANDED to the ALJ for further proceedings as provided herein. The Court further recommends that JUDGMENT be entered for Plaintiff Richard Rios and against Defendant Michael J. Astrue.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 9, 2009**                    /s/ **Gary S. Austin**
                                                            UNITED STATES MAGISTRATE JUDGE